**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.   Case No. 6:13-cr-256-Orl-37GJK

JHONY WILSON MAESTRE-POLO

## ORDER

This cause is before the Court on the following:

1. United States' Opposed Motion in Limine to Exclude Inadmissible Hearsay and the Affirmative Defense of Duress (Doc. 49), filed February 3, 2014; and

2. Response to Government's Opposed Motion in Limine to Exclude Inadmissible Hearsay and the Affirmative Defense of Duress (Doc. 53), filed February 13, 2014.

Upon consideration, the Court finds that the motion is due to be denied in part and denied without prejudice in part.

## BACKGROUND[1]

Defendant was born in Colombia and lived there most of his life. (Doc. 53, p. 2 n.1.) His father was a police officer who came to the United States because he was afraid that drug traffickers would harm him as a result of his refusal to accept bribes. (*Id.*)

---

[1] The following facts are drawn from Defendant's proffer in his opposition to the Government's motion in limine. (Doc. 53.) The actual facts of this case are for the jury to decide and may be different from those stated here. The Court does not make findings of fact at this time.

Defendant also now lives in the United States. (*Id.* ¶ 4.) His mother, sister, and aunt still live in Colombia. (*Id.* ¶¶ 4, 7, 8.)

In mid-August 2013, Defendant's mother called him to tell him that she had been threatened by an unknown man over the phone, who said, "Are you Omaira? Are you Jhony's mother? You better take care of yourself. Be careful. We are going to take you. We are going to kill you." (*Id.* ¶ 4.) Two weeks later, Defendant received a similar call, with an unknown man saying, "I am just warning you that your mother will be in trouble. Your mother is in danger." (*Id.* ¶ 5.) Days later, Defendant's mother received another threatening call. (*Id.* ¶ 6.) Soon after, Defendant received a call with instructions to fly to Colombia. (*Id.* ¶ 7.) The caller told Defendant, "[F]ollow my orders or else your mother is in danger," and also stated that the caller knew where Defendant's mother lived, shopped, and traveled. (*Id.*) Days later, his mother received a threatening note slipped underneath the door at her house. (*Id.* ¶ 8.) She then went to stay with her sister (in another part of the same city in Colombia) for about two weeks. (*Id.*)

Defendant subsequently received another call with specific flight information; the caller purchased Defendant's plane ticket. (*Id.* ¶¶ 7, 9.) On September 17, 2013 (about a month after the first call), Defendant flew to Colombia as instructed. (*Id.* ¶ 10.) A cab, which was already paid for, took him to his mother's house; the cabbie gave Defendant a cell phone for further instructions. (*Id.*) A few days later, Defendant was picked up in another cab, blindfolded, and taken to a nearby location where he was threatened and intimidated; he was then returned to his mother's house. (*Id.* ¶ 11.) On September 25, 2013, Defendant was again picked up and forced to ingest pellets of drugs. (*Id.* ¶ 13.) However, he could not keep them down, and he was returned to his mother's house. (*Id.*)

This process was repeated again several days later. (*Id.* ¶ 16.) Finally, on October 1, 2013, Defendant was sent back to the United States and told to go to a hotel in Ft. Lauderdale. (*Id.* ¶ 17.)

After he arrived, Defendant received detailed instructions to retrieve drugs from a dumpster outside the hotel and to transport them by bus to New York. (*Id.* ¶ 19.) The caller had already bought Defendant's bus ticket. (*Id.* ¶ 20.) Defendant got on the bus the next day. (*Id.*) While the bus was stopped in Orlando, DEA agents searched Defendant with his consent and found the drugs. (*Id.* ¶ 21.)

Based on this factual proffer, Defendant seeks to put on a duress defense at trial. (*Id.* at pp. 8–22.) The Government moves to exclude any evidence of the defense and hearsay statements related to the defense. (Doc. 49.) Defendant opposes. (Doc. 53.) The Court held a hearing on this matter on February 20, 2014. (Doc. 54.) This matter is now ripe for the Court's adjudication.

## STANDARDS

"Because duress is an affirmative defense, the defendant bears the initial burden to offer evidence of each of the elements of the defense." *United States v. Foster*, 153 F. App'x 674, 676 (11th Cir. 2005). If the defendant fails to satisfy this burden, he is not entitled to put his defense before the jury. *See id.* at 677.

The elements of the duress defense are: (1) the defendant "acted under an immediate threat of death or serious bodily injury"; (2) he had "a well-grounded fear that the threat would be carried out"; and (3) he had "no reasonable opportunity to escape or inform [the] police." *United States v. Alzate,* 47 F.3d 1103, 1104 (11th Cir. 1995) (alteration in original) (citation and internal quotation marks omitted). The threat of harm

may be against the defendant or a third party, such as a family member. *See United States v. Blanco*, 754 F.2d 940, 943 (11th Cir. 1985); *see also Alzate*, 47 F.3d at 1104.

The immediacy requirement is "rigorous"—that is, "fear of *future* bodily harm . . . will not suffice." *United States v. Sixty Acres in Etowah Cnty.*, 930 F.2d 857, 861 (11th Cir. 1991) (citation and internal quotation marks omitted). Further, "the apprehension of immediate danger must continue during the whole time the crime is committed." *Id.* (citation and internal quotation marks omitted).

The opportunity to inform police must be "reasonable"; for instance, courts have held that the requirement may be met if informing the police in a foreign country would be futile because they are corrupt. *See, e.g.*, *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984) (finding a triable issue for the jury where the defendant's only option was to report the duress to Colombian police, whom he justifiably feared were "paid informants for drug traffickers"). Other courts have similarly held that the requirement is met if informing U.S. authorities would be useless because the threat is against the defendant's family in a foreign country. *See, e.g.*, *United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997) (finding that a duress instruction should have been given where the defendant's cooperation with U.S. police would not have helped his father, who was kidnapped in Colombia).

## DISCUSSION

### I. Sufficiency of Duress Defense

First, the Government argues that Defendant has failed to show that the threats to himself and his mother were sufficiently immediate. (Doc. 49, pp. 5–7.) The Court disagrees. Defendant's proffer demonstrates that the unknown assailants knew his name

and whereabouts as well as his mother's name, where she lived, and her daily habits. (Doc. 53, ¶ 7.) The assailants were even physically present at his mother's house and slipped a note under her door. (*Id.* ¶ 8.) This seeming omnipresence, coupled with the ubiquity of modern technology, establish that the cartel members could have followed through on their specific threats to kidnap and kill Defendant's mother at any time. *See Otis*, 127 F.3d at 835 ("[A] jury could conclude that [the defendant] was forced to work for the cartel by the threat of a second kidnapping of his father, which would take place immediately if he did not follow orders."); *Contento-Pachon*, 723 F.2d at 694 ("[The assailant] had gone to the trouble to discover that [the defendant] was married, that he had a child, the names of his wife and child, and the location of his residence. These were not vague threats of possible future harm."); *cf. United States v. Alvear*, 181 F. App'x 778, 780 (11th Cir. 2006) (finding that the immediacy requirement was not established where there was no specific, explicit threat to the defendant or his family).

Next, the Government contends that Defendant failed to demonstrate that he had no reasonable opportunity to contact the police; the Government submits that Defendant could have informed the authorities at customs or at the hotel before he boarded the bus. (Doc. 49, pp. 5–7.) However, the Court finds that Defendant has sufficiently established this element. Defendant has proffered that contacting the police would have been futile in the weeks during the escalating threats because the Colombian authorities are demonstrably corrupt and the U.S. authorities would not be able to help his mother in Colombia. (Doc. 53, pp. 15–16.) Further, Defendant's substantiated fear that cartel members were watching his every move—in the airport, at the hotel, and on the bus—prevented him from informing the police because one false step could have resulted in

5

an immediate report back to the cartel and harm to his mother. *See Contento-Pachon*, 723 F.2d at 694 (noting that the defendant was forced to cooperate because he was being watched at all times); *cf. United States v. Alicea*, 837 F.2d 103, 105–07 (2d Cir. 1988) (finding that the reporting requirement was unsatisfied where the defendants could have escaped their watchers on multiple instances at the airport, and the concern about the defendants' family was insufficiently immediate). This evidence meets Defendant's burden at this stage and presents a triable issue of fact for the jury on whether his conduct was reasonable. *See Contento-Pachon*, 723 F.2d at 694; *Otis*, 127 F.3d at 835; *cf. United States v. Gaviria*, 116 F.3d 1498, 1532 (D.C. Cir. 1997) (finding that the defendant's conduct was unreasonable as a matter of law where he participated in a drug distribution conspiracy for more than a year despite numerous safe opportunities to inform officials, his lawyer, and others).

Thus, Defendant has sufficiently established a prima facie defense of duress. His proffer demonstrates that he acted under an immediate threat of death to his mother, that his fear of that threat was well-grounded, and that he had no reasonable opportunity to inform police. *See Alzate*, 47 F.3d at 1104. The actual facts remain to be seen, but based on the proffer, the portion of the Government's motion in limine seeking to exclude any evidence of duress is due to be denied.

**II.   Hearsay**

The Government also submits that any statements proffered by Defendant and his mother regarding what the unknown assailants told them constitute inadmissible hearsay. (Doc. 49, pp. 7–8.) However, to the extent that Defendant is offering these statements only to prove that Defendant was in fear for his mother's life, they are admissible for the

purpose of establishing the "effect on listener" and thus are not hearsay.[2] *See United States v. Herrera*, 600 F.2d 502, 504 (5th Cir. 1979) (finding that the district court's exclusion of the content of a threatening phone conversation as hearsay was improper because the conversation was "not offered to prove that [the caller] would actually carry through the threats, but rather to show [the defendant's] state of mind in consequence of the statements"); *United States v. Wright*, 783 F.2d 1091, 1098 (D.C. Cir. 1986) (noting that the content of a threatening phone call was admissible to prove duress defense where it "was offered not to prove the truth of the matter asserted but rather to show its effect on [the defendant]"). In other words, so long as the statements are not offered for the truth of the matter asserted—that the cartel members would actually follow through on the threats—but rather solely for their effect on the recipients of the calls—putting Defendant and his mother in fear—then they simply are not hearsay at all. *See* 2 Kenneth S. Broun, *McCormick on Evidence* § 249 (7th ed. 2013) ("If offered to show the defendant's reasonable apprehension of danger, the statement is not offered for a hearsay purpose because its value does not depend on its truth.").

Of course, it is nearly impossible for the Court to rule on the admissibility of such statements in a vacuum. If the statements are offered at trial for any purpose other than to show the effect on the listener, then they may constitute hearsay for which the Court

---

[2] At the hearing, counsel also discussed the "state of mind" hearsay exception. *See* Fed. R. Evid. 803(3). Statements falling under this exception are offered to prove the state of mind of the *declarant* and are therefore admissible forms of hearsay; by contrast, statements in the "effect on listener" category are offered to prove the effect on the *listener*, not the declarant, and are thus not hearsay at all. *Compare* 30C Charles Alan Wright et al., *Federal Practice & Procedure* § 7044 (2d ed. 2013) (discussing the "state of mind" exception to hearsay), *with* 30B *Federal Practice & Procedure* § 7005 (discussing the "effect on listener" category of non-hearsay). As the caller's state of mind is not relevant here, the "state of mind" exception is inapposite.

may have to give a limiting instruction. *See* 30B Charles Alan Wright et al., *Federal Practice & Procedure* § 7005 (2d ed. 2013) ("A statement which is not hearsay when offered for its effect on listener is hearsay as defined in Rules 801(a) to (c) when offered to prove the truth of the matter asserted. The giving of a limiting instruction is appropriate."). Counsel are therefore advised to be cautious and circumscribed in the manner in which they elicit such testimony. Thus, this portion of the motion in limine is due to be denied without prejudice; counsel must object to any hearsay statements contemporaneously at trial.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. United States' Opposed Motion in Limine to Exclude Inadmissible Hearsay and the Affirmative Defense of Duress (Doc. 49) is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

2. The portion of the motion seeking to exclude the duress defense is **DENIED**.

3. The portion of the motion seeking to exclude hearsay statements is **DENIED WITHOUT PREJUDICE** to reassertion at trial if appropriate.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 21, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record